**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5605-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GERARD E. MAZZARA,

    Defendant-Appellant.

_____

Submitted November 29, 2021 – Decided December 20, 2021

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Municipal Appeal No. 6218.

Peter D. Russo, attorney for appellant.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following his April 11, 2019 third conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50, defendant Gerard E. Mazzara filed a

"PETITION FOR POST[-]CONVICTION RELIEF PURSUANT TO [RULE] 3:22 AND [RULE] 7:10-2" in the Paterson Municipal Court. Defendant sought to vacate his January 17, 2017 guilty plea to his first DWI offense because he was not advised of the enhanced penalties, including mandatory incarceration, for second and subsequent DWI offenses as required by N.J.S.A. 39:4-50(c). The Paterson Municipal Court denied what it construed as defendant's motion to vacate his January 17, 2017 guilty plea. On its de novo review of defendant's motion on his appeal from the municipal court, the Law Division also denied defendant's motion. Defendant appeals from the Law Division's order. We affirm.

I.

On January 17, 2017, defendant was represented by counsel and pleaded guilty to his first DWI offense in the Paterson Municipal Court. In pertinent part, defendant testified he "consumed three vodkas prior to operating his vehicle" and, as a result, his ability to drive safely was impaired at the time of the offense. The court accepted defendant's plea of guilty and addressed sentencing.

The court asked defendant, "[s]ir[,] did you hear me read that (indiscernible) penalty to the person who pled guilty before?"[1]  In response, defendant said, "[y]es[.]"  Defendant's counsel then stated, "I'm going to readvise him of it as well Judge."  The court then asked defendant, "[y]ou understood it?"  Defendant responded, "[y]es, I just don't understand the interlock that was just mentioned."  Counsel advised defendant he was "not getting" an ignition interlock device as a result of his guilty plea, and the court told defendant he would be required to have an ignition interlock device installed if he is "convicted [for DWI] again."[2]  Defendant testified that he understood.

---

[1]  The prior defendant referred to by the court is not identified and the transcript of that individual's plea colloquy is not included in the record.

[2]  On January 17, 2017, a conviction for a first DWI offense under N.J.S.A. 39:4-50(a)(1)(i) and (ii) did not permit or require an order requiring installation of an ignition interlock device.  See L. 2014, c. 54, §2, (eff. Mar. 1, 2015).  On that date, the installation of an ignition interlock device was required only for second and subsequent DWI convictions under N.J.S.A. 39:4-50(a)(2) and (3).  See ibid. N.J.S.A. 39:4-50(a) was amended effective December 1, 2019, to require installation of an ignition interlock device for a first DWI conviction.  L. 2019, c. 248, § 2.  The amended version of the statute is therefore inapplicable to defendant's 2017 first DWI conviction, his January 2019 second DWI conviction, and his April 2019 third DWI conviction.  See generally State v. Scudieri, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 16) (holding the 2019 amendments to N.J.S.A. 59:4-50(a) apply only to offenses committed "on or after December 1, 2019").

A-5605-18

Twenty months later, on September 5, 2018, defendant was charged with a second DWI offense. On January 8, 2019, he pleaded guilty to the offense in the Newark Municipal Court and was sentenced as a second-time offender under N.J.S.A. 39:4-50(a)(2).[3] At that time, defendant signed a written notice detailing the "[p]enalties if [c]onvicted [a]gain of DWI." The notice explained the penalties for second, third, and subsequent DWI convictions, including that for a third conviction, an offender "will be imprisoned for 180 days, except that the court may order that you serve up to [ninety] days of that sentence participating in a drug or alcohol inpatient rehabilitation program approved by the Intoxicated Driver Resource Center [(IDRC)]." Defendant signed the notice on January 8, 2019.

Four months later, on April 11, 2019, defendant was found guilty of a third DWI offense in the Clifton Municipal Court.[4] The court imposed the 180-

---

[3] The sentence imposed by the Newark Municipal Court included imposition of the minimum mandatory $500 fine, thirty days of community service, and a mandatory two-year license suspension for a second DWI conviction that were required under N.J.S.A. 39:4-50(a)(2) at the time defendant committed his second offense.

[4] The record on appeal does include any documentation concerning defendant's third DWI conviction, but it is undisputed he was convicted of DWI on April 11, 2019, in the Clifton Municipal Court and the court's imposition of the mandatory 180-day sentence for that offense caused defendant to seek to vacate

day mandatory sentence required under N.J.S.A. 39:4-50(a)(3).[5]  Confronted

with the mandatory custodial term attendant to a third DWI conviction, see

N.J.S.A. 39:4-50(a)(3), defendant filed a petition in the Paterson Municipal

Court for an order "vacating [his 2017] guilty plea . . . pursuant to Rule 7:10-2,

State v. Laurick,[6] and State v. Barboza[,]"[7] claiming he "was not informed of the

---

his 2017 guilty plea in the Paterson Municipal Court.  On its de novo review of
the Paterson Municipal Court's denial of defendant's motion to vacate his 2017
guilty plea, the Law Division stayed defendant's service of the mandatory
custodial sentence imposed by the Clifton Municipal Court for defendant's third
DWI conviction.  It is unclear by what authority the Paterson Municipal Court
stayed the sentence imposed by the Clifton Municipal Court, but our disposition
of defendant's arguments on appeal do not require resolution of that issue.

[5]  The record on appeal does not reveal any other penalties and fines imposed by
the court, and they are not pertinent to the disposition of the issues on appeal.
See generally N.J.S.A. 39:4-50(a)(3) (explaining the mandatory fines and
penalties for a "third or subsequent" DWI conviction).

[6]  Defendant relies on the Law Division's decision in State v. Laurick, 222 N.J.
Super. 636 (Law Div. 1987).  He does not cite to or address our opinion
affirming the Law Division's decision, State v. Laurick, 231 N.J. Super. 464
(App. Div. 1989), or the Supreme Court's reversal of our decision, State v.
Laurick, 120 N.J. 1, 16-17 (1990) (providing that a prior uncounseled DWI
conviction, under certain circumstances, may not be used to increase the "period
of incarceration" for subsequent offenses and that such relief may be sought
through post-conviction relief "in the court of original jurisdiction").

[7]  State v. Barboza, 115 N.J. 415 (1989).  In Barboza, the Court addressed the
procedure to be followed on remand following a determination on appeal that
there was an inadequate factual basis for a guilty plea.  Id. at 417.  The decision

consequences of subsequent offenses" and he therefore suffered "a substantial denial of his rights under both the United States and New Jersey Constitutions, as he was misadvised [of the] consequences of his plea."[8]

The proposed order that accompanied defendant's petition did not provide for vacation of defendant's 2017 guilty plea. The proposed order provided that defendant's January 17, 2017 DWI conviction could not be used to enhance the "custodial aspect of any future [DWI] conviction." In his certification supporting the petition, defendant's counsel stated defendant sought only an order that the "2017 conviction not be used to [enhance] the custodial aspect of any future [DWI] convictions" because defendant "was not advised of the consequences of any subsequent conviction" during the 2017 plea proceeding.

The inconsistency between the relief sought in defendant's petition and that claimed in his counsel's certification was not addressed directly by counsel or the court in the hearing on the petition in the Paterson Municipal Court. Defendant's counsel argued the court in 2017 did not comply with the mandate of N.J.S.A. 39:4-50(c), which, in pertinent part, states that

---

is inapposite here: defendant does not argue there is an inadequate factual basis for his 2017 guilty plea to DWI.

[8] Defendant does not provide any competent evidence he was misinformed by anyone concerning the penal consequences of his 2017 guilty plea.

A-5605-18

[u]pon conviction of a violation of [N.J.S.A. 39:4-50], the court shall notify the person convicted, orally and in writing, of the penalties for a second, third or subsequent violation . . . A person shall be required to acknowledge receipt of that written notice in writing. Failure to receive a written notice or failure to acknowledge in writing the receipt of a written notice shall not be a defense to a subsequent charge of a violation of [N.J.S.A. 39:4-50].

The municipal court judge hearing defendant's petition was the same judge who presided over defendant's 2017 plea proceeding. The judge rejected defendant's claim he was not advised in 2017 of the enhanced penalties for second and subsequent DWI convictions. The judge found defendant "was absolutely advised" of the enhanced penalties and defendant "acknowledged he understood" them. The judge also found defendant testified he understood the penalties which had been read to a previous defendant who also pleaded guilty to DWI.

The judge explained there were "five to ten pleas" during a DWI court "session," and that he read the enhanced penalties for subsequent DWI convictions to the individuals who pleaded prior to defendant. The judge further found that in 2017 he "read [the enhanced penalties] the first time or maybe twice" and "the defendant acknowledge[d] he understood" them. The judge noted that during the January 17, 2017 plea proceedings he was "not going to

waste . . . time and read it . . . again" to each individual defendant, but that defendant "was probably advised of the fines and penalties" three times, and defendant's counsel said he was going to readvise defendant of those penalties.[9] The judge denied defendant's petition, concluding defendant was not entitled to withdraw his 2017 guilty plea.

Defendant appealed to the Law Division. His counsel argued the municipal court's failure in 2017 to advise defendant of the enhanced penalties for second and subsequent DWI subsequent offenses warranted an order barring defendant's 2017 conviction from being used to impose the mandatory 180-day custodial sentence for defendant's April 2019 third DWI conviction.

The Law Division interpreted defendant's petition as one requesting vacation of his 2017 guilty plea based on an alleged failure to inform defendant of the consequences of second or subsequent DWI convictions. The court found the municipal court judge in 2017 "did not advise [defendant] of the consequences of any future DWI convictions prior to the actual plea," but the court rejected defendant's claim "his guilty plea was not voluntarily and

_____

[9] We strongly disagree with the municipal court's suggestion that directly informing each defendant convicted of DWI of the enhanced penalties for a second or subsequent conviction constitutes a "waste of time." During proceedings in our courts, expediency and perceived efficiency are never a substitute for compliance with a statutory mandate.

knowingly made" because he had not been advised of the enhanced penalties. The court explained the validity of defendant's plea was not dependent on his being advised of the enhanced penalties for subsequent offenses because the enhanced penalties are "not direct consequences of a guilty plea," and the enhanced penalties are "not penal, but [are] collateral[] consequences."[10]

The court also considered the four factors established by the Supreme Court in State v. Slater, 198 N.J. 145, 157-58 (2009), for the assessment of a defendant's post-sentencing application to withdraw a guilty plea.[11] The court found defendant was not entitled to withdraw his guilty plea under the Slater factors because defendant failed to demonstrate a "colorable claim of

---

[10] Defendant did not claim he was entitled to relief from either his 2017 plea or conviction based on alleged ineffective assistance of his then-counsel, and the Law Division judge found the record did not support an ineffective assistance of counsel claim. See generally State v. Gaitan, 209 N.J. 339, 349-51 (2012) (explaining standard for establishing an ineffective assistance of counsel claim challenging a conviction following a guilty plea).

[11] In Slater, the Court directed courts to "consider and balance four factors in evaluating motions to withdraw a guilty plea." 198 N.J. at 157. The factors include: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58. Where, as here, a motion to withdraw a guilty plea is made following sentencing, the defendant must demonstrate a denial of the motion will result in a "manifest injustice" under the Rule 3:21-1 standard. Id. at 158.

innocence"; "his reasons for withdrawal [are] without merit"; and there "was a plea agreement wherein [d]efendant was represented by counsel, and another charge was dismissed." The court also concluded defendant failed to establish a "manifest injustice permitting" withdrawal of his 2017 guilty plea.

The court also determined that during the 2017 proceeding defendant "was absolutely advised" about the enhanced penalties following entry of his plea, and defendant "absolutely acknowledged that he understood" what the municipal court advised the previous defendant who pleaded guilty. The court noted the municipal court's process for informing defendant of the enhanced penalties was "[m]aybe not best practices," but the court was "satisfied that [d]efendant was made aware of the subsequent penalties for DWI offenses when he pled guilty."

The court concluded, "[n]o reason has been set forth justifying why this guilty plea should not be used in sentencing [d]efendant to 180 days in jail for a third [DWI]," and it denied what it construed to be defendant's motion to withdraw his 2017 guilty plea. The court stayed defendant's 180-day sentence for his third-DWI conviction in the Clifton Municipal Court pending his appeal to this court.

On appeal, defendant presents the following arguments:

10

POINT I

THE ORIGINAL TRIAL COURT VIOLATED THE DWI STATUTE BY NOT ADVISING DEFENDANT AS TO THE CONSEQUENCES OF HIS PLEA AND VIOLATED [DEFENDANT'S] DUE PROCESS RIGHTS[.]

POINT II

[THE LAW DIVISION JUDGE] MISCHARACTERIZED [DEFENDANT'S] ARGUMENT[.]

POINT III

[DEFENDANT] SHOULD NOT RECEIVE A JAIL SENTENCE FOR A SUBSEQUENT CONVICTION[.]

II.

In our review of a Law Division order following its de novo review of an appeal from a municipal court, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). Where the Law Division decides a post-conviction relief (PCR) petition without an evidentiary hearing, we similarly conduct a de novo review of the Law Division's factual findings and legal conclusions. See State v. Harris, 181 N.J. 391, 421 (2004) (finding where no evidentiary hearing is held, an appellate court conducts "a de novo review of both the factual findings and legal conclusions of the PCR court"); see also State v. Zeikel, 423 N.J.

11

Super. 34, 41 (App. Div. 2011) (explaining an appellate court's "standard of review is . . . plenary" where the trial court "did not take any testimony but relied solely on the same documentary record that is before [the appellate court] on appeal").

When reviewing a court's denial of a motion to withdraw a guilty plea, "[a] trial judge's finding that a plea was voluntarily and knowingly entered is entitled to appellate deference so long as that determination is supported by sufficient credible evidence in the record." State v. Lipa, 219 N.J. 323, 332 (2014). We will reverse a court's decision denying a "defendant's request to withdraw their guilty plea . . . only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." Ibid. (quoting State v. Simon, 161 N.J. 416, 444 (1999)). "A denial of a motion to vacate a plea is 'clearly erroneous' if the evidence presented on the motion, considered in light of the controlling legal standards, warrants a grant of that relief." State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014) (quoting State v. Mustaro, 411 N.J. Super. 91, 99 (App. Div. 2009)).

Defendant first argues the court erred by denying his request to withdraw his 2017 guilty plea because the municipal court in 2017 failed to inform him of the enhanced penalties for future DWI convictions as required by N.J.S.A. 39:4-

50. He argues that without being advised of the information required by the statute, he could not, and did not enter his plea knowingly and voluntarily. He claims for that reason, his plea "should not stand."

Defendant's argument is based on the faulty premise that N.J.S.A. 39:4-50(c) requires a court to inform a defendant of the enhanced penal consequences for future DWI convictions prior to accepting a guilty plea to DWI. N.J.S.A. 39:4-50(c) does not require that a court advise a defendant of the enhanced consequences of future DWI convictions prior to accepting a guilty plea. The statute requires only that a court inform a defendant of the enhanced penalties "upon conviction." N.J.S.A. 30:4-50(c). A defendant cannot be convicted of a DWI offense through entry of a guilty plea until there is acceptance of their plea to the offense. Thus, the plain language of N.J.S.A. 39:4-50(c) imposes no duty on a court to inform a defendant of the enhanced penalties for future convictions during the plea colloquy leading to a defendant's conviction.

Defendant's claim the court erred by denying his request to withdraw his guilty plea because he was not informed of the penal consequences of future DWI convictions also ignores the distinction between direct and collateral consequences to a guilty plea. "For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the

consequences of the plea." State v. Johnson, 182 N.J. 232, 236 (2005); see also R. 7:6-2(a)(1) (conditioning a municipal court's acceptance of a guilty plea in part on a finding the plea is made "voluntarily and with understanding of the nature of the charge and the consequences").

"[A] trial court's duty to ensure that a defendant understands the consequences of a plea generally extends only to those 'consequences that are "direct," or "penal," and not to those that are "collateral."'" State v. Bellamy, 178 N.J. 127, 134 (2003) (emphasis added) (quoting State v. Howard, 110 N.J. 113, 122 (1988)). Thus, any failure to inform defendant of the penalties for future DWI convictions did not undermine the validity of his 2017 guilty plea. The enhanced penalties for future DWI convictions, including those imposed for defendant's second and third DWI convictions, are not direct penal consequences of defendant's 2017 conviction because they do "not automatically flow from" that conviction. Id. at 138; see also State v. Wilkerson, 321 N.J. Super. 219, 227 (App. Div. 1999) (explaining a court is not required to inform a defendant of "possible or even potential enhancement consequences of future aberrant conduct" during a plea colloquy and noting such information "involves only a collateral issue"). Instead, the imposition of the penalties for defendant's second and third DWI convictions, including the pending 180-day sentence for

his third DWI conviction, arise solely from unlawful conduct occurring years after the conduct supporting his 2017 conviction.

The court also properly denied defendant's motion to withdraw his 2017 guilty plea because he presented no evidence supporting withdrawal under the Slater factors. See Slater, 198 N.J. at 157-58. On appeal, defendant does not challenge the court's analysis of the Slater factors or its conclusion that he failed to satisfy his burden of establishing an entitlement to withdraw his guilty plea based on a weighing of the factors. Having abandoned any claim the court erred in its determination based on the factors, see Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (finding claims not addressed in a merit's brief on appeal are "abandoned"), we do not address the issue other than to note the record supports the court's analysis of the Slater factors, its finding defendant did not establish a manifest injustice, and its denial of defendant's request to withdraw his guilty plea.

Defendant also argues the court erred by denying his request for an order barring use of his 2017 conviction as a first conviction requiring imposition of the enhanced custodial penalties for second and subsequent DWI convictions. He contends the court's purported failure to advise him of the enhanced penalties at the time of his 2017 DWI conviction as required under N.J.S.A. 39:4-50(c)

bars use of that conviction to support the enhanced 180-day custodial sentence for his April 2019 third DWI conviction.[12]  We are not persuaded.

---

[12]  The municipal court judge and the Law Division judge found as a matter of fact that defendant was fully advised of the enhanced penalties for DWI when he pleaded guilty to DWI in 2017.  If we could properly accept those factual findings, they would require the affirmance of the Law Division's order because defendant's arguments on appeal rest entirely on his claim the court failed to inform him of the enhanced penalties for second and subsequent DWI violations as required by N.J.S.A. 39:4-50(c).  We do not question the veracity of the municipal court's rendition of what occurred during the 2017 plea colloquy. Indeed, defendant's admission to the court in 2017 that he heard a prior warning about "penalties," and defendant's inquiry about the ignition interlock device— which would have reasonably been in response to advice about the penalties for second or subsequent offenses under N.J.S.A. 39:4-50(a)(1), (2) and (3) at the time—provide strong circumstantial evidence defendant did, in fact, hear instructions about the enhanced penalties previously provided by the court.  But the record also includes defendant's verified petition asserting "[t]he judge never told [him] what would happen if [he] was ever convicted of the same offense a second or third time," and he "was not told about future consequences to [his] plea or testimony that day."  A court cannot make proper and final factual findings based on conflicting evidence without conducting a hearing.  See, e.g., State v. LaResca, 267 N.J. Super 411, 419 (App. Div. 1993) (explaining that where resolution of a material issue rests on conflicting certifications, a "[d]efendant had a right to an evidential hearing on the contested issues").  Because there was no hearing on the factual dispute concerning whether defendant was fully advised of the enhanced penalties at his 2017 plea proceeding, we do not accept the Law Division's denial of defendant's motion based on its finding defendant was "absolutely" advised of the enhanced penalties.  In any event, for the reasons we explain, a hearing is unnecessary because we affirm the court's order regardless of whether defendant was advised of the enhanced penalties in accordance with N.J.S.A. 39:4-50 during the 2017 plea proceeding.

This court has consistently held that a court's failure to advise a defendant of the consequences of future DWI convictions as required by N.J.S.A. 39:4-50(c) does not bar imposition of the enhanced penalties under N.J.S.A. 39:4-50(a)(2) and (3) on subsequent DWI convictions. In State v. Petrello, the defendant was arrested for DWI twice, with the offenses occurring one month apart. 251 N.J. Super. 476, 477 (App. Div. 1991). The defendant pleaded guilty to DWI arising from his second arrest before he appeared in court and pleaded guilty to the earlier charge arising from his first offense. Ibid. Because he had already pleaded guilty to the second offense, the court imposed "the enhanced penalties due a second offender" when he was sentenced for the first offense. Ibid.

The defendant appealed from his second conviction, arguing he could not be sentenced as a second-time offender under N.J.S.A. 39:4-50(a)(2) because he had not received the oral and written warnings concerning enhanced penalties required under N.J.S.A. 39:4-50(c) prior to the commission of the offense for which he was convicted second. Id. at 478. He argued, as defendant does here, that because N.J.S.A. 39:4-50(c) states a failure to receive written notice of enhanced penalties for subsequent violations is not a defense to subsequent charges, the statute must be interpreted "to bar sentencing as a subsequent

offender without, minimally, an oral advisement of the penalties for a second, third or subsequent violation." Ibid.

We rejected the defendant's argument, reasoning that its acceptance "would frustrate the obvious legislative intent to provide enhanced penalties for each subsequent conviction of the statute" and would "reward the defendant who intentionally or negligently fails to appear in court and subsequently violates the statute because he could not then be sentenced as a subsequent offender." Ibid. In a holding that applies with syllogistic precision here, we found it "abundantly clear . . . that the enhanced penalties of N.J.S.A. 39:4-50 must be imposed at sentencing on entry of a second drunk-driving conviction, regardless of . . . whether or not defendant had previously been advised orally or in writing of the penalties for a subsequent violation." Id. at 479; see also Scudieri, ___ N.J. at ___ (slip op. at 21) (noting "[i]n Petrello we held that the enhanced penalty for a subsequent DWI conviction was properly imposed even where the second violation occurred prior to sentencing for the defendant's first conviction, and despite the defendant not having been previously advised orally or in writing of the enhanced penalties").

In State v. Nicolai, a municipal court erroneously sentenced the defendant as a first-time offender under N.J.S.A. 39:4-50(a)(1) for his second DWI

offense. 287 N.J. Super. 528, 530-31 (App. Div. 1996). When the defendant was subsequently convicted of a third DWI offense, he argued it was too late to remedy the court's prior error in sentencing him as a first offender for his second offense because to do so would "impose a sentence inconsistent with [his] justifiable expectations." Id. at 531.

We rejected the defendant's argument, explaining "[n]o defendant can claim a legitimate expectation of finality in a sentence below that statutorily mandated minimum" and finding there was nothing in the record to "suggest that [the] defendant pled guilty because he erroneously believed he was subject only to penalties applicable to a second offense." Id. at 532-33. We also determined there is a "judicial obligation to enforce a legislatively mandated sentence[,]" and in fulfilling that obligation, "[w]hen the Legislature imposes minimum penalties for certain offenses, the judiciary must enforce that mandate." Id. at 531.

We were also unpersuaded by the defendant's due process claim, finding "[t]he Constitution does not require us to treat sentencing as a game in which a misplay by a judge means immunity for an offender." Ibid. Relying on the principles established in Petrello, we held that "the failure to receive written or oral notice of the penalties applicable to a second, third or subsequent conviction

19

does not bar imposition of the progressively enhanced sentences mandated by our statutes." Id. at 532.

In Zeikel, we rejected the defendant's due process claim that his prior out-of-state DWI convictions could not be used as a basis for the imposition of enhanced penalties because he was not given "adequate notice at the time of [those] prior convictions" of the "recidivist sentencing enhancement[s]" under N.J.S.A. 39:4-50, and had such notice been given, he would have been able to "preserve[] . . . necessary exculpatory evidence." 423 N.J. Super. at 43. We reiterated that a "failure to receive written or oral notice of the penalties applicable to a second, third or subsequent conviction does not bar imposition of the progressively enhanced sentences mandated by our statutes." Id. at 43-44 (quoting Nicolai, 287 N.J. Super. at 532). We reasoned that "[i]f a repeat offender has no constitutional right to written or oral notice of enhanced potential sentences in the future, there is also no due process requirement of prior notice of a potential defense for a future offense." Id. at 44.

Here, even if defendant was not properly informed during his 2017 plea proceeding of the enhanced penal consequences of future DWI convictions, we discern no basis to bar consideration of that conviction as a basis for imposing the mandatory enhanced penalties for his third DWI conviction. Any purported

failure of the court in 2017 to advise defendant of the enhanced penalties does not provide refuge from the mandatory penalties, including the 180-day custodial sentence for his April 2019 third DWI conviction.  See Scudieri, ___ N.J. at ___ (slip op. at 16); Zeikel, 423 N.J. Super. at 43; Nicolai, 287 N.J. Super. at 532; Petrello, 251 N.J. Super. at 478.

Defendant further argues the Law Division's decision in Laurick, 222 N.J. Super. 636, requires the conclusion that the municipal court's failure to inform him of the penalties for future DWI violations when he pleaded in 2017 bars use of his 2017 conviction for enhanced penalties resulting in a custodial sentence. We find no support for defendant's argument in the Law Division's decision in Laurick. More importantly, the Supreme Court's decision in Laurick, which reversed our affirmance of the Law Division's decision, does not hold or suggest that a failure to inform a defendant of the enhanced penalties for second or subsequent DWI violation bars the imposition of the penalties for subsequent DWI convictions. See Laurick, 120 N.J. at 16-17.

In Laurick, the Court held:

> an uncounseled conviction without waiver of the right to counsel is invalid for the purpose of increasing a defendant's loss of liberty. In the context of repeat DWI offenses, this means that the enhanced administrative penalties and fines may constitutionally be imposed but that in the case of repeat DWI convictions based on

> uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions.
>
> [Id. at 16 (emphasis added).]

The Court's holding established a "constitutional limit" under our State Constitution: a "defendant may not suffer an increased period of incarceration as a result of a" violation of the principles established in Rodriguez v. Rosenblatt, 58 N.J. 281 (1971), "that led to an uncounseled DWI conviction." Laurick, 120 N.J. at 16. In Rodriguez, the Court held that an indigent defendant is charged in municipal court is entitled to assigned counsel when charged with offense where "imprisonment in fact or other consequence of magnitude is actually threatened or is a likelihood on conviction." 58 N.J. at 295.

The Court's holding in Laurick is grounded in a defendant's constitutional right to counsel. 120 N.J. at 15; see also State v. Patel, 239 N.J. 424, 440 (2019) (noting "[t]he right-to-counsel principles articulated in Laurick"); State v. Hrycak, 184 N.J. 351, 400-01 (2005) (explaining to obtain relief under Laurick a "defendant has the burden of proving in a second or subsequent DWI proceeding that he or she did not receive notice of the right to counsel in the prior case"). The Court's holding in Laurick "provided a limited form of post-conviction relief to those defendants who had not waived their right to counsel

and who were not informed by the court of their right to retain counsel or, if indigent, of their right to assigned counsel without cost." Patel, 239 N.J. at 438.

The Court's holding in Laurick is therefore inapplicable where, as here, a defendant was represented by counsel during the prior proceedings resulting in the DWI conviction that provides the basis for the imposition of the enhanced penalties for second and subsequent convictions under N.J.S.A. 39:4-50(a)(2) and (3). See State v. Enright, 416 N.J. Super. 391, 400 (App. Div. 2010) (explaining "Laurick held a defendant may not be sentenced to an enhanced period of incarceration based on previous uncounseled convictions," but it "did not hold that any alleged infirmity in a prior conviction would result in the same relief"). We reject defendant's claims to the contrary.

To the extent we have not directly addressed any arguments asserted on defendant's behalf, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed. Effective seven days from the date of this opinion, the stay of defendant's 180-day custodial sentence set forth in the court's July 25, 2019 order is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5605-18